# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1345

_____

Maurice Walker

*Plaintiff - Appellant*

v.

Thomas R. Kane; Missouri Department of Corrections; George Lombardi; Tom Villmer; Amy Roderick; Doug Barker

*Defendant*s

Dale White

*Defendant - Appellee*

Jerome Nash; Lisa White, Corrections Case Manager II - Farmington Correctional Center; Unknown Worelly, Corrections Case Manager II

*Defendant*s

Unknown Amonds, Corrections Officer I

*Defendant - Appellee*

Dwayne V. Kempker, Deputy Director, Zone II - Division of Adult Institutions - MO DOC

*Defendant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 11, 2018
Filed: March 19, 2018

_____

Before COLLOTON, BENTON, and ERICKSON, Circuit Judges.

_____

BENTON, Circuit Judge.

On July 3, 2012, Maurice Walker, an inmate at Farmington Correctional Center, received a new cellmate, Jerome Nash. According to Walker, he immediately told corrections officers Dale White and Catherine Amonds he feared living with Nash. Six days later, Nash raped Walker. Walker sued the two officers under 42 U.S.C. § 1983, for failure-to-protect in violation of the Eighth Amendment. The jury found for the officers. Walker appeals, arguing the district court[1] made evidentiary errors. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Before trial, the officers moved to exclude any reference to officer White's disciplinary file. Walker wanted to cross-examine White about an incident that he thought showed White's character for untruthfulness. The district court refused to allow the cross-examination, because the "unfair prejudice outweighs the probative value of it."

_____

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

Walker also moved to exclude any reference to his "sexual orientation or sexual relationships/encounters." The officers responded that evidence of Walker's sexually-aggressive behavior toward previous cellmates was relevant to whether "everyone should have known" Walker was in danger. The court said that admissibility depended on how Walker presented his case. The court instructed the officers' counsel not to introduce this evidence "until we've had a sidebar."

At trial, with the rape stipulated to, the parties focused on whether the officers were aware of a substantial risk of serious harm. *See **Whitson v. Stone Cty. Jail***, 602 F.3d 920, 923 (8th Cir. 2010) ("In order to establish an Eighth Amendment failure-to-protect claim, a plaintiff must show that the prison official was deliberately indifferent to a 'substantial risk of serious harm.'"). Walker, testifying first, said Nash was "six foot something," "200 plus pounds," and "well-known for sexual assaults." (Walker was five-and-a-half feet tall, and about 160 pounds.) Walker said that the day Nash moved in, officer Amonds told him she knew what Nash was "capable of" and would "lock him up" if there were any problems. Officer White added, "You'll be all right." According to Walker, he told them he "felt threatened" by Nash, but did not ask for protective custody. Walker claimed he also told officer Douglas W. Baker he felt threatened. Walker admitted he did not mention this to any officers after these conversations.

Walker then called White and Amonds to testify. White said he did not remember Walker, or any conversation with him. Walker did not attempt to ask White about his disciplinary file. Amonds recalled telling Walker—with White present—to let an officer know if he had any troubles with Nash, something she customarily told individuals with new cellmates. But according to Amonds, Walker expressed no fears. Amonds knew Nash to be a "bully," but not violent or known for sexual assaults.

The officers' only witness was officer Baker. He was in charge of cell assignments and had paired Walker and Nash. Baker testified, contradicting Walker, that Walker did not tell him he felt threatened by Nash. According to Baker, he did not talk to Walker during July 2012. Baker described his process of assigning inmates, pairing "aggressive" inmates with others who are at least not "timid." Over Walker's objection (and after a sidebar discussion), Baker said he paired Walker and Nash because of Walker's aggressive behavior toward cellmates.

Walker challenges the district court's evidentiary rulings. "The admission or exclusion of evidence is reviewed for abuse of discretion; evidentiary rulings are reversed only for a clear and prejudicial abuse of discretion." ***Davis v. White***, 858 F.3d 1155, 1159 (8th Cir. 2017) (internal quotation marks omitted). This court gives "*substantial deference* to a trial court's exclusion of evidence under Federal Rule of Evidence 403 so long as the trial court's exercise of discretion [does] not unfairly prevent a party from proving [its] case." ***United States v. Condon***, 720 F.3d 748, 754 (8th Cir. 2013) (alterations and emphasis in original) (internal quotation marks omitted).

II.

Walker contends that the district court should have allowed cross-examination of White about a disciplinary incident allegedly probative of his character for untruthfulness. Walker summarized his position at the pre-trial hearing on motions in limine:

> THE COURT: What is it that you say he was disciplined for, and exactly what evidence are you going to introduce? Not why. You want to cross-examine him on it, or you're not going to introduce an exhibit?
>
> MR. MEYER [Walker's counsel]: It would not be through an exhibit. It would be under 608(b) through inquiry only on cross-examination.

THE COURT:  Okay.  So tell me what the incident was.

MR. MEYER:  So, Your Honor, the incident itself involved printing a photograph of an offender and writing derogatory comments on it and then the filing of the report and investigation that followed, and as a result of this, there were six DOC policies that were found to be violated.  The final two included being truthful in reports, interviews, during investigations, inquiries, and other dealings with the public and staff and fully cooperating with all administrative inquiries and fully and truthfully relating knowledge of all facts pertaining to alleged behavior, and so I think both of these are properly brought in under 608(b) as specific instances of conduct that goes towards truthfulness.

. . .

THE COURT:  . . .  I think that the potential prejudice and unfair prejudice outweighs the probative value of it.  So I'm going to sustain [the officers' motion to exclude reference to White's disciplinary file].

A.

A party may claim error in the exclusion of evidence only if it "informs the court of its substance by an offer of proof, unless the substance was apparent from the context."  **Fed. R. Evid. 103(a)(2)**.  *See Murphy v. Missouri Dept. of Corr.*, 506 F.3d 1111, 1117 (8th Cir. 2007) ("One of the most fundamental principles in the law of evidence is that in order to challenge a trial court's exclusion of evidence, an attorney must preserve the issue for appeal by making an offer of proof.").  "The purpose of an offer of proof is to inform the court and opposing counsel of the substance of the excluded evidence and to provide the appellate court with a record sufficient to allow it to determine if the exclusion was erroneous."  *United States v. Elbert*, 561 F.3d 771, 775 (8th Cir. 2009).  *See Strong v. Mercantile Tr. Co.*, 816 F.2d 429, 432 (1987) ("The purpose of the offer of proof is to allow both the trial court and the appellate

court on review to ascertain whether excluding the evidence caused any prejudice to the appellant.").

A party must inform the district court of the substance of the evidence (unless apparent from the context) even where, as here, the court granted a pre-trial motion in limine excluding the evidence. *See **Smith v. Hy-Vee, Inc.**,* 622 F.3d 904, 908-09 (8th Cir. 2010). True, "[o]nce the court rules definitively on the record—either before or at trial—a party need not *renew* an . . . offer of proof to preserve a claim of error for appeal." **Fed. R. Evid. 103(b)** (emphasis added). But this does not mean no offer is required at all. *See **Hy-Vee**,* 622 F.3d at 909 ("As the Advisory Committee Notes observe, [Rule 103(b)] applies 'when the party has otherwise satisfied the . . . offer of proof requirement of Rule 103(a).'"). It is also true that "the opposition to" a pre-trial motion in limine can serve as the required offer of proof. *See **Lawrey v. Good Samaritan Hosp.**,* 751 F.3d 947, 951-52 (8th Cir. 2014), *citing **Shelton v. Kennedy Funding, Inc.**,* 622 F.3d 943, 958 (8th Cir. 2010) (after the district court granted a motion in limine excluding testimony, an offer of proof at trial was not required where the party opposing the motion had filed an affidavit that "outlined the substance of [the] proposed testimony"). But this is true only if an opposition sufficiently informs the court of the substance of the proposed evidence.

The question here is whether the colloquy with the district court sufficiently informed the court of the substance of the proposed cross-examination. Walker's counsel did not provide questions for the proposed cross-examination and the likely responses. This court has stressed the "importance of expressing precisely the substance of the excluded evidence . . . by stating with specificity what he or she anticipates will be the witness' testimony or, at the trial court's discretion, by putting the witness on the stand, outside the presence of the jury, and eliciting responses in a question and answer format." *Strong*, 816 F.2d at 432 & n.4. Here, counsel did describe the subject of the proposed cross-examination, the argument for its admission, and the contents of the official report in the record. This parallels an offer

of proof this court has considered sufficient. *See United States v. Alston*, 626 F.3d 397, 403 & n.6 (8th Cir. 2010).

This court "need not definitively decide the sufficiency of [Walker's] offer of proof because, regardless of the standard of review, [Walker's] claim fails." *See Elbert*, 561 F.3d at 776. *See also United States v. West*, 829 F.3d 1013, 1019 n.5 (8th Cir. 2016) (dismissing Rule 103(a)(2) argument as "of no consequence as it does not alter our conclusion"). This court assumes, without deciding, that Walker's offer of proof sufficiently preserved the issue whether the district court should have allowed cross-examination about the incident discussed in the colloquy.

B.

Though extrinsic evidence is generally inadmissible to prove specific instances of a witness's conduct, "the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of" the witness. **Fed. R. Evid. 608(b)**. However, "[e]ven if admissable under Rule 608(b), a district court may nevertheless exclude the evidence if its 'probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . .'" *United States v. Beal*, 430 F.3d 950, 956 (8th Cir. 2005), *quoting* **Fed. R. Evid. 403**. *See King v. Ahrens*, 16 F.3d 265, 269 (8th Cir. 1994) ("The Rule 403 balancing of probative value versus prejudicial effect is an integral step toward a determination of admissibility under . . . Rule 608(b).") Because evidence of White's dishonesty is probative of his character for untruthfulness, the question is whether the proposed cross-examination's probative value is substantially outweighed by its danger.

The probative value of the proposed cross-examination was low. True, it may have impeached White's credibility. The alleged prior untruthfulness occurred in a situation like that at the trial:  inquiry into accusations of on-the-job misconduct. *Cf.*

*Alston*, 626 F.3d at 404 (proffered evidence was "not all that probative of [witness's] character for truthfulness," because the "motive" for the previous lie was different). But the probative value of impeaching White's credibility was low. "To determine the value of impeaching [a witness] . . . we must examine [the witness's] testimony as a whole." *United States v. Logan*, 121 F.3d 1172, 1175 (8th Cir. 1997). White testified only that he did not remember any interaction with Walker. As Walker emphasized at trial, this neither directly exculpated the officers nor contradicted Walker's story. *Id.* at 1176 ("value of impeaching" a witness was "relatively low," where much of the witness's testimony was "neither exculpatory nor inculpatory"). Even if the jury found White was lying, there was still Amonds's conflicting, un-impeached account. *See Alston*, 626 F.3d at 404 (probative value of proposed Rule 608(b) cross-examination was "limited," in part because the witness's testimony was "not the only evidence linking" the defendant to the crime); *United States v. Beck*, 557 F.3d 619, 621 (8th Cir. 2009) (district court did not abuse its discretion in precluding Rule 608(b) cross-examination, because "even if [the witness's] testimony were thoroughly discredited . . . such impeachment would have had no impact on the" similar testimony of others).

Walker emphasizes that the district court stated in response to the officers' motion for a directed verdict that this was "a credibility case," later adding, "the only issue to the jury is . . . the credibility issue . . . ." *See Cummings v. Malone*, 995 F.2d 817, 825-26 (8th Cir. 1993) (district court abused its discretion in excluding impeachment evidence under Rule 403 in part because "credibility of witnesses was paramount"). *Cf. United States v. Dennis*, 625 F.2d 782, 798 (1980) ("Where the testimony of one witness is critical to the government's case, the defendant has a right to attack that witness's credibility by a wide-ranging cross-examination."). But as discussed, *White's* credibility was not paramount. In any event, the importance of witness credibility alone does not require admission. *See King*, 16 F.3d at 268-70 (district court did not abuse its discretion in excluding Rule 608(b) cross-examination under Rule 403, even though "[c]redibility was a key issue").

In contrast, the danger of unfair prejudice and confusion of the issues was high. "'Unfair prejudice' (under Rule 403) means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Dennis*, 625 F.2d at 796. The disciplinary incident here primarily involved misconduct—printing and distributing derogatory comments about an inmate—unrelated to White's character for untruthfulness. That misconduct could have encouraged decision on an improper basis. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997) ("[I]mproper grounds certainly include . . . generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged . . . ."); *United States v. Lupino*, 301 F.3d 642, 646 (8th Cir. 2002) (evidence of defendant's drug-dealing was unfairly prejudicial in a prosecution for assault, because it "created the risk that the jury would assume that [the defendant] was someone with a propensity for criminal behavior"). While the disciplinary incident involved violating truthfulness-related policies, the offer of proof does not detail how White violated them. The proposed cross-examination could have "resulted in the kind of mini-trial on a peripherally related matter that [Rule 608(b)] is designed to prevent." *See Alston*, 626 F.3d at 404.

Walker could perhaps have lessened these risks by limiting questioning to avoid mention of the primary misconduct. But this court must look to the offer of proof and not "evaluate the trial court's decision in light of how the appellant now characterizes the excluded evidence." *United States v. Kirkie*, 261 F.3d 761, 767 (8th Cir. 2001). Walker's offer of proof broadly describes the incident, without indicating limits on the proposed cross-examination. *Cf. Lee v. Rapid City Area School Dist. No. 51-4*, 981 F.2d 316, 321-22 (8th Cir. 1992) (no abuse of discretion in excluding testimony, in part because the "offer made no effort to satisfy [the court's] concerns" about generality). Additionally, Walker appears to reject any limit on the cross-examination. For example, his appellate brief says, "The trial court was wrong to prohibit Walker from cross-examining White about his prior misconduct (and especially the lies he told about that misconduct) . . . ."

This is a close question, but "the deferential standard of review tips the scales in favor of upholding" the district court's decision. *See* **Condon**, 720 F.3d at 755-56. Because the proposed cross-examination had limited probative value and significantly risked unfair prejudice and confusion of the issues, the district court did not abuse its discretion in excluding the evidence. *See* **United States v. Johnson**, 968 F.2d 765, 766-67 (8th Cir. 1992) (citing "the broad discretion granted to the trial court" in holding that the district court did not abuse its discretion by refusing to allow Rule 608(b) cross-examination of a witness about a suspension for, among other things, "having lied to his supervisor"); **Alston**, 626 F.3d at 404 (district court did not abuse its discretion in excluding Rule 608(b) cross-examination under Rule 403, where "[i]n addition to having only limited probative value, the proffered cross-examination would have created a danger of unfair prejudice").

Walker relies on *United States v. Whitmore*, 359 F.3d 609, 618-22 (D.C. Cir. 2004). The district court there precluded the defendant from cross-examining a prosecution witness about: (1) a judge's finding in a previous case that the witness had lied under oath; (2) the witness's driver's license suspension and failure to report the suspension to his supervisors; and (3) the witness's failure to make child support payments. *Id.* at 614-15. The D.C. Circuit found error. *Id.* at 618-22. *Whitmore* is not persuasive authority for reversal here. The probative value there was greater, because the witness "provided, almost exclusively, the evidence connecting" the defendant to the crime. *Id.* at 613 (noting that the defendant "defended on the ground that [the witness] had fabricated the story") (footnote omitted). Also, the risk of unfair prejudice there was lower, because the witness, unlike White, was not a party in the case.

## C.

In his appellate brief, Walker references a second incident in White's disciplinary file. According to the report on this incident, White was suspended one

-10-

day for failing to file a use-of-force report "immediately" and "failing to mention the force utilized at 1:08 p.m. and only report[ing] the use of force which occurred at 1:10 p.m." Walker's counsel did not mention this incident in the colloquy with the district court, nor was it apparent from the context. Walker failed to preserve this issue for appeal. *See* **Fed. R. Evid. 103(a)(2)**.

Absent an offer of proof, "this court may review for plain error." ***Harris v. Chand***, 506 F.3d 1135, 1141 (8th Cir. 2007). "Plain-error review permits reversal only if the error was so prejudicial as to have affected substantial rights resulting in a miscarriage of justice." ***Id.*** (internal quotation marks omitted). This second incident, with less probative value than the first, similarly risked unfair prejudice and confusion of the issues. This court finds no plain error.

III.

Walker contends the district court abused its discretion in admitting Baker's testimony about his aggressive behavior toward cellmates. During Baker's testimony, Walker's counsel requested a sidebar and objected to any mention of his sexual history. The court overruled the objection. Baker then testified:

Q. And could you tell us who was responsible for placing Mr. Walker and Jerome Nash in the same cell?

A. I was.

Q. And how did you make that determination?

MR. MEYER: Same objection, Your Honor.

THE COURT: And it's noted for the record and overruled.

A.   Basically, [Walker's] past three cellmates, although everything matched up, they came one at a time, as it was over a period of time, complaining, begging to get out of the cell because of him intimidating and coercing them, pressuring them.

Walker argues that Baker's statement is inadmissible, because his reason for pairing Walker and Nash is irrelevant. *See* **Fed. R. Evid. 401**; **402**. Even if relevant, he argues, it was inadmissible under Rule 412(a), which generally prohibits, in civil proceedings "involving alleged sexual misconduct," evidence offered to prove a victim's "sexual behavior" or "sexual predisposition." Such evidence is admissible only if "its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." **Fed. R. Evid. 412(b)(2)**. *See United States v. Wardlow*, 830 F.3d 817, 820 (8th Cir. 2016) ("The purpose of the Rule 412 restriction is 'to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process.'"). Alternatively, Walker argues the evidence is inadmissible under Rule 403.

This court need not address these arguments, because any error in admitting Baker's testimony was harmless. "To be harmless error, the admitted evidence must not have had a substantial influence on the verdict." *Batiste-Davis v. Lincare*, 526 F.3d 377, 381 (8th Cir. 2008). Baker's testimony had little, if any, probative value on the key issue whether Walker told White and Amonds he felt threatened. Walker relied on his own testimony to show that he did. The officers contradicted him, emphasizing inconsistencies in his story. Any additional effect of Baker's statement on Walker's credibility was insignificant.

Walker argues Baker's testimony introduced "sexual stereotyping" and "innuendo into the factfinding process." *See Wardlow*, 830 F.3d at 820. But the testimony actually admitted over Walker's objection was brief. Neither counsel

alluded to it again.  It was non-inflammatory, not explicitly referencing sexual behavior.  Finally, the rape—the factual issue where a jury might use sexual stereotyping or innuendo—was stipulated.  Even if improperly admitted, Baker's testimony did not have a substantial effect on the jury's verdict.[2]

*******

The judgment is affirmed.

_____

_____

[2]Walker argues that the cumulative effect of the alleged errors warrants reversal.  But this court does not "apply the [cumulative-error] doctrine when the evidentiary rulings are within the trial court's discretion." *McPheeters v. Black & Veatch Corp.*, 427 F.3d 1095, 1106 (8th Cir. 2005).  In any event, the cumulative effect of the alleged errors, if any, did not amount to substantial prejudice. *Id.* ("We will not reverse based upon the cumulative effect of errors unless there is substantial prejudice . . . .").